**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JOSE ANTONIO TORRES-HERNANDEZ,
a.k.a. Roberto Martinez-
Hernandez,
          *Defendant-Appellant.*

No. 05-50136

D.C. No.
CR-04-02060-LAB

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
February 7, 2006—Pasadena, California

Filed May 8, 2006

Before: Alex Kozinski, Stephen S. Trott, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Bea

## COUNSEL

Zandra L. Lopez, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Carol C. Lam, Roger W. Haines, Jr. & David P. Curnow, United States Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

BEA, Circuit Judge:

Today we decide a district court need not and may not take into account Hispanics who are ineligible for jury service to determine whether Hispanics are underrepresented on grand jury venires. To establish a prima facie violation of the Sixth Amendment's guarantee that grand juries reflect a fair cross-section of the community, a defendant must prove in part "that the representation of [an allegedly underrepresented] group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *Duren v. Missouri*, 439 U.S. 357, 364 (1979). We hold that, to determine whether Hispanics are underrepresented to an unconstitutional degree in venires, a district court must rely on that evidence which most accurately reflects the judicial district's actual percentage of jury-eligible Hispanics. Because the district court here used the most accurate data presented to it by the parties—data that excluded segments of the Hispanic population ineligible for jury service—we affirm Torres-Hernandez's conviction and sentence.

I.  *Background*

On February 7, 2005, after a jury trial, the district court sentenced Jose Antonio Torres-Hernandez to fifty-one months' imprisonment and three years' supervised release for being a deported alien within the United States, in violation of 8 U.S.C. § 1326. Torres-Hernandez had previously been deported on October 5, 1996.

Before his trial, Torres-Hernandez moved to dismiss his indictment. He argued that, in violation of the Sixth Amendment, the systematic exclusion of Hispanics in Southern District of California grand jury venires had resulted in a grand jury that did not represent a fair cross-section of the community.

To support his motion, Torres-Hernandez presented the expert opinion and statistical analysis of Dr. John R. Weeks. Weeks prepared evidence that the overall population of the Southern District of California, composed of San Diego and Imperial Counties, is 28.9 percent Hispanic. Weeks also found that, of individuals in the district "age eligible" for jury service, 24.8 percent were Hispanic. Finally, Weeks calculated that "jury-eligible" Hispanic individuals comprised 16.1 percent of the district's jury-eligible population.[1]

Weeks compared this data to the percentage of Hispanics on Torres-Hernandez's grand jury venire—14.1 percent—to determine whether Hispanics were fairly represented. Weeks subtracted the percentage of Hispanics on Torres-Hernandez's grand jury venire from the general, age-eligible, and jury-eligible percentages described above to arrive at various "absolute disparities": 14.8, 10.7, and 2.0 percentage points respectively.[2] Weeks then divided the absolute disparity corresponding to the jury-eligible Hispanic population (2.0 percent) by the percentage of jury-eligible individuals who are Hispanic (16.1 percent) to arrive at a "relative disparity" of 12.1 percent.[3]

---

[1]To be "jury eligible," an individual must be a United States citizen, at least eighteen years old, have resided for at least one year within the judicial district, and be able to speak English. 28 U.S.C. § 1865(b)(1) & (3). The individual must also be able to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form. *Id.* § 1865(b)(2).

[2]"We determine absolute disparity by taking the percentage of the group at issue in the total population and subtracting from it the percentage of that group that is represented on the master jury wheel." *United States v. Sanchez-Lopez*, 879 F.2d 541, 547 (9th Cir. 1989).

[3]"Comparative disparity is determined by taking the absolute disparity percentage and dividing that number by the percentage of the group in the total population." *Sanchez-Lopez*, 879 F.2d at 548. Comparative disparity is synonymous with relative disparity.

The percentages in this opinion are rounded to the nearest tenth of a percentage point. When the relevant percentages are not rounded, the relative disparity of 12.1 percent is the correct quotient.

After Torres-Hernandez was convicted for being a deported alien inside the country,[4] the district court denied his motion to dismiss his indictment because it ruled that Hispanics were fairly represented on his grand jury venire.[5] First, the district court found that the Ninth Circuit favors the absolute disparity test, not the relative disparity test, to measure the representativeness of a distinctive group on jury venires. Second, the district court implicitly found that, to determine whether Hispanics were underrepresented on Torres-Hernandez's grand jury, it must compare the percentage of Hispanics on Torres-Hernandez's grand jury to the percentage of jury-eligible Hispanics in the district. Because the absolute disparity between the percentage of jury-eligible Hispanics and the percentage of Hispanics on Torres-Hernandez's grand jury venire was only 2.0 percentage points, the district court held that Torres-Hernandez did not establish a prima facie violation of the Sixth Amendment's fair cross-section requirement.

Torres-Hernandez timely appealed to this court.

## II.    *Analysis*

### A.    Sixth Amendment Fair Cross-Section Claim

We review *de novo* a Sixth Amendment challenge to the composition of a grand jury. *See United States v. Rodriguez-Lara*, 421 F.3d 932, 939 (9th Cir. 2005).

---

[4]Although Torres-Hernandez had filed the motion to dismiss his indictment on account of the purported Sixth Amendment violation before his trial, the district judge did not rule on the motion until after Torres-Hernandez had been convicted.

[5]Before trial, the district court denied Torres-Hernandez's motion to suppress the admission of a certificate of nonexistence of record (CNR)—a document establishing that an alien has not been granted permission to enter the country—as a violation of the Sixth Amendment's Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004). This ruling was correct. *See United States v. Cervantes-Flores*, 421 F.3d 825, 834 (9th Cir. 2005) (per curiam).

**[1]** The Supreme Court in *Duren* established that grand juries do not represent a fair cross-section of the community when the jury-selection process systematically excludes a distinctive group of the jury-eligible population. 439 U.S. at 363-64.

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364.[6]

> The second prong of the *Duren* test requires proof, typically statistical data, that the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community. We have been confronted with this issue before and have favored the "absolute disparity" test for measuring the representativeness of a distinctive group in a jury pool.

*United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996) (internal citation omitted).

---

[6]Torres-Hernandez satisfies *Duren*'s first element because Hispanics constitute a distinctive group in the community. *See United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996). The district court did not reach *Duren*'s third element because it found that Torres-Hernandez failed to satisfy the second element. Therefore, only *Duren*'s second element is at issue here.

**[2]** Our precedents agree that to prove Hispanics are underrepresented in a given district's jury pools, the ultimate basis for comparison is the district's actual percentage of jury eligible Hispanics. *See id.* at 727 (relying on the government's statistical data, which excluded minors and non-citizens, to find that the absolute disparity was inadequate to satisfy *Duren*'s second element, because such data more accurately reflected the actual percentage of jury-eligible Hispanics than did the defendant's general population data); *Rodriguez-Lara*, 421 F.3d at 942 (reiterating *Esquivel*'s preference for data that excludes jury-ineligible populations, as opposed to general population data, because the former is a "*refined set of data* for the purpose of the defendant's prima facie case under *Duren*" (emphasis added)).

**[3]** At the same time, our cases conflict as to whether a defendant who presents only evidence that includes non-jury-eligible segments of the population may ever satisfy a prima facie case. In *United States v. Artero*, 121 F.3d 1256 (9th Cir. 1997), we held that a defendant must proffer jury-eligible statistical evidence of Hispanics to compare against the percentage of Hispanics on a jury venire. *Id.* at 1261 ("The right question is whether Hispanics eligible to serve on federal juries were unreasonably underrepresented because of systematic exclusion."). By contrast, we later held in *Rodriguez-Lara* that a defendant may establish that jury-eligible Hispanics are underrepresented on a jury venire by proffering evidence of a less precise approximation for the percentage of jury-eligible Hispanics in a district—the overall percentage of Hispanics in the district or, if available, the percentage of age-eligible Hispanics in the district.[7] 421 F.3d at 941-44. *Rodriguez-Lara* recognized its conflict with *Artero*, but simply dismissed *Artero* as incorrectly decided. *See id.* at 942-43.

---

[7]Being "age-eligible" means being eighteen years of age or older, which is also a necessary element for being "jury-eligible." *See Rodriguez-Lara*, 421 F.3d at 941-42. It does not include the statutory requisites of U.S. citizenship and ability to use English, at least sufficiently to fill out the jury qualification form. *See supra* note 1.

**[4]** We need not make a *sua sponte* en banc call in this case to resolve the intra-circuit conflict because the district court here had jury-eligible statistical data that satisfied both the higher evidentiary burden of *Artero* and, necessarily, the lesser burden of *Rodriguez-Lara. See United States v. White-head*, 896 F.2d 432, 434 (9th Cir. 1990) (reasoning that it need not resolve an intra-circuit conflict regarding the applicable standard of review because the district court did not err even under the stricter, *de novo* standard).

**[5]** We resolve this case under the principle explained in *Esquivel*: When presented with various types of data to determine whether Hispanics are underrepresented on grand jury venires, a court must rely on the statistical data that best approximates the percentage of jury-eligible Hispanics in the district.

In *Esquivel*, we did not need to decide whether the defendant had established a prima facie case with general population data because we had before us data that better approximated the actual percentage of jury-eligible Hispanics in the district. 88 F.3d at 727. The defendant proffered evidence that, in 1993, 24.2 percent of the Southern District of California's population was Hispanic. *Id.* at 726. Because the defendant's master wheel was composed of 9.7 percent Hispanics, the defendant claimed there existed an absolute disparity of 14.5 percentage points. *Id.* The government rebutted this evidentiary showing by requesting that we take judicial notice of 1990 census data showing that Hispanic U.S. citizens over eighteen years old comprised only 14.6 percent of the relevant population, which led to only a 4.9 percentage points absolute disparity. *Id.* at 726-27. We looked to the government's statistical evidence because it better approximated the relevant Hispanic population—those individuals eligible to serve on federal juries. *See id.* at 727 (calling the defendant's computation of absolute disparity, calculated using the total population of Hispanics, "inaccurate and overestimated" because "the absolute disparity between Hispanics in the pop-

ulation and the jury wheel is only 4.9 percent when *readily available data relating to jury eligibility* is taken into account." (emphasis added)). The government's evidence established that the absolute disparity between jury-eligible Hispanics and Hispanics on the defendant's jury venire was constitutionally insignificant. *Id.*

**[6]** Just as we did in *Esquivel*, in deciding the absolute disparity of Hispanics was constitutionally insignificant in the present case, the district court here relied on the most refined data it had. Although Torres-Hernandez's witness Weeks prepared evidence that Hispanics compose 28.9 percent of the general population and 24.8 percent of the age-eligible population, he also prepared evidence that only 16.1 percent of the jury-eligible population was Hispanic.[8, 9] The district court

---

[8]That Torres-Hernandez, rather than the government, proffered the most refined set of data is unimportant. We are mindful that future defendants may decide to withhold unfavorable jury-eligible data so as to not trump their own general population or age-eligible data. As mentioned above, it is not clear at this time whether less refined data can satisfy a prima facie case when more refined data is available, but not proffered. We reiterate our admonition in *Esquivel* that a defendant may not "selectively include data which supports her position, while ignoring census data which . . . also bears on the issue of disparity." *Esquivel*, 88 F.3d at 727 n.2. Thus, it would be objectionable for a defendant to submit age-eligible data if the data source also included other jury-eligible factors such as citizenship or English proficiency. Of course, regardless whether one party must proffer the more refined data, the opponent may offer such data, as did the government, in *Esquivel*. *See id.* at 726-27.

[9]This court in *Artero* cited a possible reason for the substantial drop of Hispanics in the jury-eligible population of the Southern District of California:

The able district judges in the Southern District were cognizant that the district, consisting of two counties on the border with Mexico, would likely have many Hispanic residents who had not yet attained citizenship or English proficiency, because they had only recently come to the United States to seek better work to support themselves and their families. As a matter of common sense, the percentage of Hispanics eligible for federal jury service

correctly found that a 2.0 percentage points absolute disparity between the percentage of jury-eligible Hispanics and the percentage of Hispanics on Torres-Hernandez's grand jury venire was constitutionally insignificant. *See id.* (holding that a 4.9 percentage points absolute disparity was constitutionally insignificant). Therefore, the district court correctly denied Torres-Hernandez's motion to dismiss his indictment based on a violation of the Sixth Amendment's fair cross-section requirement.

### B.   Other Constitutional Claims

Torres-Hernandez's other claims clearly fail under controlling precedent.

Torres-Hernandez claims that a CNR was "testimonial" within the meaning of *Crawford* and its admission into evidence therefore violated his Sixth Amendment Confrontation

---

in those two counties was likely to be lower than the ratio for the general population.

121 F.3d at 1261.

Statistical data that excludes populations such as under-age, non-citizen, and non-English-speaking Hispanics will tend more accurately to approximate the actual percentage of jury-eligible Hispanics than less refined, or general population, data. However, it is conceivable that a particular set of jury-eligible data could have such a large margin of error, due to an expert's flawed methodology or other factors, that other data before the court would more accurately reflect the actual percentage of jury-eligible Hispanics in a district. If such a case were to arise, a district court would have to weigh experts' competing evidence, including the experts' qualifications, biases, motives, methodologies, and all other elements used to weigh expert testimony, to determine which data set was most accurate. We would review a district court's finding for clear error. *Cf. Paige v. California*, 291 F.3d 1141, 1144 n.3 (9th Cir. 2002) ("We review the district court's conclusion as to a *prima facie* case of disparate impact [under Title VII] *de novo* but review the underlying findings of fact for clear error. In particular, we give deference to a district court's findings regarding statistical evidence." (internal citation omitted)).

Clause rights. However, we recently rejected just such a claim. *See United States v. Cervantes-Flores*, 421 F.3d 825, 834 (9th Cir. 2005) (per curiam).

The district court also did not violate Torres-Hernandez's Sixth Amendment rights by sentencing him above the applicable statutory maximum based on its finding of a prior conviction, without a finding of such prior conviction by a jury beyond a reasonable doubt. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), is controlling precedent. *See United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005).

Finally, Torres-Hernandez argues that the district court violated Fifth Amendment retroactivity principles by considering the Sentencing Guidelines advisory, pursuant to the remedial holding in *United States v. Booker*, 125 S. Ct. 738 (2005). Such an argument has no merit. *See United States v. Dupas*, 417 F.3d 1064, 1066-69 (9th Cir. 2005).

III.   *Conclusion*

We AFFIRM Torres-Hernandez's conviction and sentence.