**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Raimundo MARTINEZ–OROSCO, aka**
**Raimundo Martinez Orosco,**
**Defendant—Appellant.**

**No. 05–50432.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 2006.

Filed Dec. 28, 2006.

Michele A. Mckenzie, Esq., Zandra L. Lopez, Esq., FDSD—Federal Defenders of San Diego, Inc., San Diego, CA, for Defendant–Appellant.

Before: HALL, McKEOWN, and WARDLAW, Circuit Judges.

## MEMORANDUM *

Raimundo Martinez–Orosco appeals his indictment and sentence for illegal reentry in violation of 8 U.S.C. § 1326. He challenges his indictment on two grounds: (1) his Sixth Amendment rights were violated because Hispanics were underrepresented on the jury wheel from which grand jurors were chosen, and (2) the district court erred in instructing the grand jury to re-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

frain from considering possible punishment in deciding whether to indict. Martinez–Orosco also challenges the district court's decision to enhance his sentence under § 1326(b) and U.S.S.G. § 2L1.2 for a prior conviction that was not charged or proven to a jury. All three challenges fail.

## I. Grand Jury Underrepresentation

 Martinez–Orosco contends that Hispanics were underrepresented on the jury wheel because the composition of the jury wheel was drawn exclusively from voter registration lists. To make out a prima facie case of unconstitutional underrepresentation, Martinez–Orosco must show

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). The burden then shifts to the government to rebut the prima facie case. *See United States v. Rodriguez–Lara,* 421 F.3d 932, 940 (9th Cir.2005) (citing *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977)).

There is no dispute that Martinez–Orosco met the first element. To successfully demonstrate the second element of his prima facie case, Martinez–Orosco must show that the absolute disparity between Hispanics on the jury wheel and jury-eligible Hispanics in the community is unreasonably high. *United States v. Torres–Hernandez,* 447 F.3d 699, 701 (9th Cir.2006); *United States v. Rodriguez–Lara,* 421 F.3d 932, 943 (9th Cir.2005).

Martinez–Orosco urges us to consider the relative disparity between the jury wheel and comparison group rather than absolute disparity. However, "[o]ur case law has settled on 'absolute disparity'... as the appropriate measure of the representativeness of the jury pool." *Rodriguez–Lara,* 421 F.3d at 943.

Martinez–Orosco also challenges which Hispanics should be included in the comparison group. He asks us to benchmark underrepresentation on his grand jury by comparing the percentage of Hispanics on the jury wheel to the percentage of all age-eligible Hispanics in the community ("community data"). The government urges us instead to compare the percentage of Hispanics on the jury wheel to only the percentage of jury-eligible Hispanics in the community ("jury-eligible data"). Our case law supports the use of jury-eligible data when it is available and presented to the court. We have not endorsed community data in these circumstances. *See Torres–Hernandez,* 447 F.3d at 705; *United States v. Esquivel,* 88 F.3d 722, 727 (9th Cir.1996). Thus, jury-eligible data provides the proper comparison pool, whether we consider the comparison to be part of Martinez–Orosco's prima facie case or part of the government's rebuttal.

Martinez–Orosco submitted data indicating that the absolute disparity between the percentage of Hispanics on the jury wheel and the percentage of jury-eligible Hispanics in the community is 2%, which is the same absolute disparity that we concluded was constitutionally insignificant in *Torres–Hernandez.* *See Torres–Hernandez,* 447 F.3d at 705. The record does not support a claim of underrepresentation of Hispanics on the jury wheel.

## II. Grand Jury Instructions

 Martinez–Orosco contends that the district court unlawfully restricted the

grand jury's power when it instructed the jury that it should not consider possible punishment in deciding whether to indict. In *United States v. Cortez–Rivera*, 454 F.3d 1038 (9th Cir.2006), we examined the same instructions at issue in this case and concluded that they were appropriate. *Id.* at 1041. Martinez–Orosco's challenge to the grand jury instructions therefore fails.

*III. Sentencing*

Finally, Martinez–Orosco claims that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), his prior conviction for murder and kidnaping must be proven to a jury before serving as a basis for an increased sentence. We disagree. The Supreme Court in *United States v. Booker* characterized *Apprendi's* holding as follows: "any fact *(other than a prior conviction)* which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (emphasis added). The district court's finding of a prior conviction falls within the clear exception set forth in *Apprendi* and affirmed in *Booker*. *United States v. Salazar–Gonzalez*, 458 F.3d 851, 859 (9th Cir.2006) ("[T]he fact of a prior conviction may be found by a district court using a preponderance of the evidence standard.").

**AFFIRMED.**