**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAIME A. MARES, | No. 07-56058 |
| Petitioner - Appellant, | D.C. No. CV-04-00929-MMM |
| v. | |
| LARRY SCRIBNER, Warden, Calipatria State Prison, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted July 13, 2010
Pasadena, California

Before: FARRIS and SILVERMAN, Circuit Judges, and CAMP, Senior District Judge.[**]

Jaime Mares appeals the district court's denial of his 28 U.S.C. § 2254

petition.  We have jurisdiction under 28 U.S.C. § 2253 and we affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Jack J. Camp, Senior United States District Judge for the District of Northern Georgia, sitting by designation.

Mares argues that Hispanics were underrepresented in the state grand jury pool in violation of his Sixth and Fourteenth Amendment rights. Assuming, without deciding, that Mares has a Sixth Amendment right to a grand jury pool that is a fair cross-section of the community , both Mares' Sixth and Fourteenth Amendment claims fail.

We evaluate Mares' claim to determine whether "the representation of [Hispanics] in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." *United States v. Torres-Hernandez*, 447 F.3d 699, 703 (9th Cir. 2006) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979). The Fourteenth Amendment test is similar. *See United States v. Esquivel*, 88 F.3d 722, 725 (9th Cir. 1996) (citing *Castaneda v. Partida*, 430 U.S. 482, 494 (1977)); *United States v. Mitchell*, 502 F.3d 931, 952 (9th Cir. 2007). Mares argues that the state court erred in using the 1990 census data instead of the data provided by his expert, Dr. Weeks.

The use of the 1990 census data to calculate the absolute disparity was not contrary to or an unreasonable application of federal law. Supreme Court cases analyzing jury composition have all relied on census data. *See Alexander v. Louisiana*, 405 U.S. 625, 627 (1971) (using 1960 census data); *Castaneda*, 430 U.S. at 495 (using 1970 census data); *Duren*, 439 U.S. at 362-63 (upholding the

2

use of 1970 census data in a 1976 case against challenges that the data did not reflect 1976 populations); *Teague v. Lane*, 489 U.S. 288, 301 n.1 (1989) (part IV of the opinion joined by three other Justices).

Our cases have also analyzed disparity claims using census data. *See Esquivel*, 88 F.3d at 727-28 (using 1990 census data); *United States v. Rodriguez-Lara*, 421 F.3d 932, 944 (9th Cir. 2005) (using 2000 census data). Most recently in *Torres-Hernandez*, we held that "[w]hen presented with various types of data to determine whether Hispanics are underrepersented on grand jury venires, a court *must* rely on the statistical data that best approximates the percentage of jury-eligible Hispanics in the district." *Torres-Hernandez*, 447 F.3d at 704 (emphasis added). Here the state court determined that the data based on the 1990 census was most accurate. The state court's finding of fact was not unreasonable.

The 9.2% disparity derived from the 1990 census data does not constitute "substantial underrepresentation." *See Swain v. Alabama*, 380 U.S. 202, 208-09 (1965), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 78 (1986). Mares' grand jury claims fail.

Mares also argues that he was entitled to lesser included offense jury instructions under *Beck v. Alabama*, 447 U.S. 625 (1980). Even assuming *Beck* applies, the evidence does not support instructing the jury on the lesser included

3

offenses. Under California state law and *Beck*, a trial court has a duty to instruct on lesser included offenses "when the evidence raises a question as to whether all of the elements of the charged offense were present, but not when there is no evidence that the offense was less than that charged." *People v. Barton*, 12 Cal.4th 186, 194-95 (Cal. 1995). The defense's scenario cannot be "purely speculative." *People v. Pride*, 3 Cal.4th 195, 250 (Cal. 1992).

Mares argues he was entitled to an express malice second degree murder instruction because the evidence shows that he aided and abetted an unpremeditated murder. Express malice exists "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature." *People v. Nieto Benitez*, 4 Cal.4th 91, 102 (Cal. 1992). (quotations omitted). Mares points to his testimony that there was an alleged altercation between his passengers and the pedestrians and argues that the jury could have found that criminal liability attached when Mares remained in the car with the engine running after his passengers exited the car to kill Gerardo Sernas. The evidence showed either that Mares planned out the drive-by shooting with Oscar Zatarian, or that Mares had no clue as to what was about to happen and was simply an innocent bystander. Mares' scenario is purely speculative.

4

Mares also argues he was entitled to an implied malice second degree murder instruction. Implied malice murder has a "physical and a mental component." *Nieto Benitez*, 4 Cal.4th at 106. Mares argues that his act of driving a car, combined with the evidence that Zatarian was a gang member who had been recently released from prison, there were rifles in a bag in the car, and the events from the night before, were sufficient to meet the elements of implied malice murder. First, the physical act here occurred a day after the heated events. Second, the guns were in a bag and there was no evidence that the guns were loaded. Without any suspicion that his passengers were going to shoot people, Mares was merely driving people – not an inherently dangerous activity. The state court's holding was not unreasonable.

AFFIRMED.