NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

FREDERICK JEROME HILL, JR., *Appellant.*

Nos. 1 CA-CR 21-0231
1 CA-CR 24-0170
1 CA-CR 24-0506
(Consolidated)

FILED 11-04-2025

Appeal from the Superior Court in Maricopa County
No. CR2018-006863-001
The Honorable Frank W. Moskowitz, Judge

**AFFIRMED**

COUNSEL

Branscomb Wilhite Law Firm, Phoenix
By Monique Branscomb Wilhite
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

## MEMORANDUM DECISION

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

**B E C K E**, Judge:

¶1        Defendant Frederick Jerome Hill, Jr. appeals his convictions and sentences for first-degree felony murder, armed robbery, and conspiracy to commit aggravated robbery. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        On the evening of August 20, 2016, Deshaun M. was waiting with his girlfriend and brother in the parking lot of a gentlemen's club for other guests to arrive for Deshaun's birthday party. A Mercedes-Benz with two men inside pulled up near Deshaun. Deshaun told his girlfriend and brother that he would be right back and got into the Mercedes-Benz. After ten minutes, Deshaun's brother and girlfriend had not heard from Deshaun and could not reach him. Becoming concerned, they looked around the club's parking lot and then at a hotel near the club. Police responded to a call for shots fired at that hotel and found Deshaun in the parking lot. He was pronounced dead at the scene.

¶3        Police found an iPhone near Deshaun's body with Hill's fingerprint on the phone case. Deshaun's phone, an Android, was missing. DNA swabs were taken of Deshaun's hands, and the single-source major contributor was consistent with Hill. Hill was also listed on registration and title for a matching Mercedes-Benz at the relevant time.

¶4        Upon locating Deshaun's phone, police interviewed the only contact that Hill's and Deshaun's phones had in common: Amber[1]. Amber told police she arranged for Hill to purchase 30–40 oxycodone pills from Deshaun on the night of his murder. Hill had then texted another individual, Sam[2], about the arranged drug purchase and said a "[l]ick [was] going down." "Lick" is street slang for a robbery or burglary. Initially, both

---

[1] We use a pseudonym in place of a witness's name.

[2] A pseudonym.

Hill and Sam were charged as co-defendants. The State later dismissed the charges against Sam and prosecuted only Hill.

**¶5**        The State initially indicted Hill for first-degree murder and armed robbery in CR2016-007034[3]. However, through an interview with homicide detective Anthony Winter, defense counsel discovered that Detective Winter presented false testimony to the grand jury to secure Hill's indictment and in affidavits to support search and arrest warrants.

**¶6**        Detective Winter admitted mistakenly including in his report and testifying that Deshaun's brother identified Hill as the Mercedes-Benz driver, the car that Deshaun got into before he was found dead. However, Deshaun's brother merely identified Hill as someone he recognized generally—not someone he recognized from the night of the murder. To address the false statements, the State dismissed the indictment and re-indicted Hill for first-degree felony murder, armed robbery, and conspiracy to commit aggravated robbery.

**¶7**        Before trial, Hill moved to suppress evidence obtained from a search warrant based on the detective's affidavit and requested a *Franks*[4] hearing. Hill took issue with the following statements the detective made in his application for the warrant:

> (1) Upon presenting the photographic lineup, [Deshaun's brother] identified the person in position #2 as a person he recognized. The person in position [#]2 was identified as Frederick Hill Jr.

> (2) The 2007 Mercedes Benz S Class passenger car with Arizona license plate [ ] was registered to Frederick Hill at the time of the incident on August 20, 2016, and observed on surveillance video in the parking lot of the [hotel] . . ., and in the parking lot of [the gentlemen's club] around the time of Deshaun [ ]'s murder.

---

[3] The State moved this court to take judicial notice of the records in the initial case against Hill per Arizona Rule of Evidence 201. We grant its motion. *In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4 (App. 2000) ("[T]his court [may] take judicial notice of anything of which the trial court could take notice . . . . It is proper for a court to take judicial notice of its own records or those of another action tried in the same court.").

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

¶8          For statement (1), Hill claimed Detective Winter omitted the information that Deshaun's brother did not recognize Hill "from the club that night." As for statement (2), Hill claimed it was a false statement to say the car was observed on surveillance video in the parking lots of both the hotel and the gentlemen's club.

¶9          Under *Franks*, the superior court found the detective "recklessly disregarded the truth by including a false statement in the supporting affidavit and made a reckless omission of fact that tends to mislead," but upon "removing the false statement and adding in the omission" the court found "the remaining content of the affidavit [was] more than sufficient to support a finding of probable cause." The court denied Hill's motion to suppress.

¶10          After a 25-day jury trial, Hill was convicted of first-degree felony murder, armed robbery, and conspiracy to commit aggravated robbery. Following his conviction, Hill moved for a new trial, which the superior court denied, Hill also moved to continue sentencing and to hold a competency hearing, which the court granted. Hill was determined competent to proceed and was subsequently sentenced to varying terms of imprisonment on each count, the longest of which was life imprisonment with the possibility of release after 25 years. Hill then moved to vacate the judgment of guilt based on lack of competency, which was denied.

¶11          Hill appeals. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶12          Hill raises six arguments on appeal. We address each in turn.

## I.    Hill Fails to Establish Prosecutorial Error.

¶13          Hill first argues he was denied a fair trial, and this court should reverse his conviction because of cumulative "prosecutorial misconduct." Hill also claims the superior court abused its discretion when it denied his motion for a new trial and his motion for mistrial for the same.

¶14          The State argues that because Hill does not "allege any ethical violations by the prosecutors, his claims should be analyzed for 'prosecutorial error' instead." Prosecutorial misconduct and prosecutorial error both encompass "any conduct that infringes a defendant's constitutional rights." *State v. Murray*, 250 Ariz. 543, 548, ¶ 12 (2021).

4

Misconduct, however, may "imply a concurrent ethical rules violation." *Id.* Because Hill does not argue "concurrent ethical rules" violations, we refer to his claims as "prosecutorial error."

**¶15**		Hill must show that "the prosecutor's [error] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Murray*, 250 Ariz. at 548, ¶ 13. If error is present and "a reasonable likelihood exists that the [error] could have affected the jury's verdict . . . we will reverse a conviction." *State v. Dansdill*, 246 Ariz. 593, 602, ¶ 28 (App. 2019). Where the defendant objected at trial, we review each claim for harmless error. *Id.* Additionally, we review the denial of a motion for new trial and motion for mistrial for an abuse of discretion. *State v. Mills*, 196 Ariz. 269, 271, ¶ 6 (App. 1999).

### A. False testimony to the grand jury

**¶16**		Hill first argues the State relied on false testimony to secure an indictment and conviction. Hill takes issue with the false statements Detective Winter made to the first grand jury. But Hill does not argue any prosecutor knew about or abetted Detective Winter's false testimony before Hill's counsel discovered it.

**¶17**		It is undisputed that Detective Winter's testimony that Deshaun's brother identified Hill as present on the night of the murder was false. But he provided that testimony to secure the initial indictment—an indictment that was ultimately dismissed. The State obtained a second indictment without the detective's false testimony. We cannot say the State committed prosecutorial error when it did exactly what we expect of prosecutors in this situation: dismiss the tainted indictment and obtain a new indictment without the false testimony. *See Maretick v. Jarrett*, 204 Ariz. 194, 198, ¶ 14 (2003) (holding misleading testimony at a grand jury indictment and the prosecutor's interference necessitated a remand for a redetermination of probable cause); *see also United States v. Basurto*, 497 F.2d 781, 785 (9th Cir. 1974) ("[I]f the prosecutor had brought the perjury to the court's attention before the trial commenced and the indictments had been dismissed, the Double Jeopardy Clause of the Fifth Amendment would not have barred trial under a new indictment."). Hill fails to demonstrate prosecutorial error here.

### B. False statements in a search warrant affidavit

**¶18**		Hill also argues the State committed prosecutorial error when Detective Winter made false statements in an affidavit used to support the search warrant for the iPhone found by Deshaun's body.

**¶19**　　　　As an initial matter, false statements used by a detective to support search warrants are police misconduct, not prosecutorial misconduct (or error). This issue is addressed by moving to suppress and showing the defendant is entitled to a *Franks* hearing. *See State v. Lapan*, 249 Ariz. 540, 546, ¶ 16 (App. 2020). Hill moved to suppress the evidence and the superior court ruled on his request for a *Franks* hearing, finding there was still probable cause to search the phone upon removing the false statements.

**¶20**　　　　Hill does not argue the superior court erred in its redetermination of probable cause. Though we could treat Hill's failure to develop this argument on appeal as waiver of that argument, in our discretion, we elect to review the redetermination of probable cause. *State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8 (App. 2001) (finding waiver for failure to develop argument). We review *de novo* the court's finding that a redrafted search warrant affidavit is sufficient to establish probable cause. *State v. Buccini*, 167 Ariz. 550, 555 (1991).

**¶21**　　　　A defendant challenging a search warrant affidavit is entitled to a hearing "when he makes a substantial preliminary showing (1) that the affiant knowingly, intentionally, or with reckless disregard for the truth included a false statement in the supporting affidavit, and (2) the false statement was necessary to the finding of probable cause." *Frimmel v. Sanders*, 236 Ariz. 232, 239, ¶ 27 (App. 2014). Upon showing perjury or reckless disregard for the truth, the false statement is struck and "[u]nless the affidavit, purged of its falsities . . . provides a sufficient basis for probable cause, the search warrant must be voided and the evidence seized pursuant to it must be suppressed." *Id.* at ¶ 28.

**¶22**　　　　Hill made the requisite showing that Detective Winter both recklessly disregarded the truth with a false statement and recklessly omitted a fact that tends to mislead. The superior court determined, however, that the affidavit, stripped of the falsity and including the material omission, was more than sufficient to establish probable cause for the search. We agree.

**¶23**　　　　Courts look at the totality of the circumstances to determine whether an officer has probable cause to conduct a search. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983). An officer has probable cause "if a reasonably prudent person, based upon the facts known by the officer, would be justified in concluding that the items sought are connected with the criminal activity and that they would be found at the place to be searched." *Buccini*, 167 Ariz. at 556.

¶24 Even with the false statement struck and the omission added, the facts known to Detective Winter at the time and included in the affidavit were more than sufficient to support a finding of probable cause to search the iPhone. On the night of Deshaun's murder, the iPhone was found within feet of his body. Hill's fingerprint was found inside the phone's case. Amber admitted to police that she had set up a drug transaction between Deshaun and Hill to occur on the night Deshaun was murdered, another connection between Hill and the victim. These facts were more than sufficient to establish probable cause to search the phone.

### C. DNA and disposal of the murder weapon

¶25 Hill next argues the prosecutor "improperly suggested that Sam could be a potential minor contributor to the DNA found on [Deshaun's] hands" and improperly asked the jury: "If you were a suspect in a murder case, and you knew the police were looking for you, what would you do with the murder weapon?"

¶26 Any "[s]uggestion by question or innuendo of unfavorable matter which is not in evidence and which would be irrelevant, or for which no proof exists is improper and can constitute misconduct." *See Pool v. Superior Court (State)*, 139 Ariz. 98, 103 (1984). However, the prosecutor is given "wide latitude in presenting closing argument to the jury" and may "summarize the evidence, make submittals to the jury, urge the jury to draw reasonable inferences from the evidence, and suggest ultimate conclusions." *State v. Allen*, 253 Ariz. 306, 338 (2022) (internal quotations and citations omitted).

¶27 At trial, a forensic scientist testified that swabs from Deshaun's hand at the scene of the crime had the DNA of at least three people, with Hill as a major contributor and two unidentifiable minor contributors. In closing argument, Hill's defense counsel asserted, based on testimony from the scientist, that one of the minor contributors was a woman. In rebuttal, the prosecutor said the following:

> **[PROSECUTOR]:** There's also the minor contributors that [the forensic scientist] testified to. She testified, on the stand, that she couldn't make a determination about who the minor contributors were. You were told something about there might have been female DNA on there, but a determination couldn't be made. And I want to make sure I'm clear on this, we don't know who those minor contributors are, but I would suggest to you that one possibility regarding the female DNA,

or potential female DNA, is [Jane][5]. She was with Deshaun that night and, at the time, she was his girlfriend. There were other potential minor contributors as well. And, again, don't know who they are, but I would submit to you that another potential minor contributor is [Sam].

¶28     The prosecutor's argument was consistent with the evidence presented at trial. At trial, Deshaun's brother testified that Deshaun shook the hands of two men in a vehicle before getting into that same vehicle the night of the murder. Based on mapped cell phone records, Sam's phone hit a cell site one mile from the crime scene about fifteen minutes before police received a 911 call reporting shots fired. Further, the prosecutor emphasized that the forensic scientist could not specifically identify the minor contributors, but that Hill was the major contributor. The prosecutor presented a reasonable inference to the jury based on the evidence presented at trial— that Sam could be a potential minor contributor.

¶29     As to the rhetorical question, defense counsel in her closing argument reminded the jury that the State had failed to present the murder weapon. The prosecutor then said the following in rebuttal closing:

> **[PROSECUTOR]:** . . . The defendant had four months to dispose of the murder weapon. He had four months. We didn't find the murder weapon, but the defendant certainly had a lot of time to dispose of it . . . . [H]ere's a question for you: If—if you were a suspect in a murder case, and you knew . . . that the police were looking for you, what would you do with the murder weapon? That's something to think about here. I won't even draw the conclusion for you. I'll let you draw it as individuals and as jurors in this trial.

¶30     These statements were also consistent with evidence presented at trial. While the State invited the jurors to put themselves in the shoes of Hill — an improper argument — it did not improperly "appeal to the fears or passions of the jury." *See State v. Morris*, 215 Ariz. 324, 337, ¶ 58 (2007); *see also Taylor v. DiRico*, 124 Ariz. 513, 518 (1980) (holding "golden rule" arguments are improper). The prosecutor suggested a reasonable explanation for the murder weapon's absence, consistent with the evidence. That included evidence showing Hill was arrested four months after the

---

[5] A pseudonym.

murder and evidence showing Hill may have known he was being pursued by police.

¶31        Moreover, the superior court instructed the jury that the lawyers' arguments were not evidence to be considered in reaching its conclusions. *See State v. Newell*, 212 Ariz. 389, 403, ¶¶ 67–68 (2006) (holding that jury instructions stating that closing arguments are not evidence negated improper comments of prosecutor). On this record, Hill fails to show error.

### D. Improper vouching

¶32        Finally, Hill argues the State engaged in improper vouching when it "vouched for the credibility of [witnesses]" and "asserted that [Hill] engaged in a robbery, had an accomplice, and conspired to commit a crime, even though no evidence established that any property was taken from [Deshaun] or that an accomplice was present."

¶33        Prosecutorial vouching occurs when the prosecutor "places the prestige of the government behind its witness" or "suggests that information not presented to the jury supports the witness's testimony." *State v. Johnson*, 247 Ariz. 166, 204, ¶ 157 (2019) (internal quotations and citations omitted). "The first type of vouching involves personal assurances of a witness's veracity" while "[t]he second type of vouching involves prosecutorial remarks that bolster a witness's credibility by reference to matters outside the record." *State v. King*, 180 Ariz. 268, 277 (1994).

¶34        Hill fails to provide any specific examples in the record of the State vouching for witnesses. A review of the trial transcripts reveals only one mention of vouching. Hill claimed it was vouching and "inappropriate for the State to say that they took something to the grand jury and then the grand jury said it was okay" in its closing argument. As best we can determine, Hill was referencing the following statement made by the State:

> You all heard Detective Winter testify in this case. Detective Winter conceded his mistakes in this case. It's your job to judge his credibility, but he conceded the mistakes. Detective Winter went back to the grand jury, this case was re-presented to the grand jury, and the statement that he made at the initial grand jury was corrected at the next grand jury.

¶35 This statement does not constitute vouching. The State is conceding Detective Winter made false statements at the first grand jury proceeding and clarifies that he then corrected those statements for the second grand jury proceeding. Hill fails to show error.

¶36 Hill further contends that no evidence was presented at trial to support that he "engaged in robbery, had an accomplice, and conspired to commit a crime." It is not clear to this court how this constitutes vouching. Nevertheless, we address the sufficiency of the evidence for Hill's convictions below and find substantial evidence supports the verdict. *See infra* ¶¶ 38–44.

¶37 Because Hill fails to show any error, he necessarily fails to show the superior court abused its discretion in denying his motions for new trial and mistrial based on prosecutorial error. *Mills*, 196 Ariz. at 271.

## II. The Superior Court Correctly Denied Hill's Motion for Judgment of Acquittal.

¶38 Hill next argues the superior court erred in denying his Arizona Rule of Criminal Procedure 20 motion for judgment of acquittal on all three counts. We review a denial of a motion for judgment of acquittal *de novo. State v. Andersen*, 255 Ariz. 320, 323, ¶ 7 (App. 2023).

¶39 The superior court must "enter a judgment of acquittal on any offense charged in an indictment . . . if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). Substantial evidence is "proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011) (internal quotations and citations omitted). "We view the facts in the light most favorable to sustaining the verdicts and resolve all conflicts in the evidence against the defendant." *Andersen*, 255 Ariz. at 323, ¶ 7. For our review, circumstantial and direct evidence are indistinguishable. *Id.*

¶40 Relevant to Hill's case, a person commits conspiracy where, with "intent to promote or aid the commission of an offense, such person agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense." A.R.S. § 13-1003(A). A person commits armed robbery if "in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking

or retaining property." A.R.S. § 13-1902. And a person commits felony murder if he commits or attempts to commit, in this case, robbery "and, in the course of and in furtherance of the offense or immediate flight from the offense, the person . . . causes the death of any person." A.R.S. § 13-1105(A)(2).

¶41 In his Rule 20 motion, Hill argued the State failed to show that (1) Hill took anything from Deshaun; (2) Hill had a weapon; and (3) Hill and Sam communicated about the robbery. We disagree. Substantial evidence supports the jury's verdict.

¶42 The State presented evidence that Hill was present at the crime scene. Hill's phone was found near Deshaun's body and Hill's DNA was found on both his own phone and Deshaun's hands. Cell phone records place Sam and Hill in the area during the time of the crime, and text messages between Hill and Sam discussing a "lick," a slang term commonly used to describe robbing someone, indicate a conspiracy to commit a robbery.

¶43 Additionally, the State presented evidence that Hill used force in coercing Deshaun to surrender property, namely Deshaun's gunshot wounds and witness testimony describing men fighting at the crime scene and hearing subsequent gun shots. As to the property, the State presented evidence that Amber arranged for Hill to purchase 30–40 oxycodone pills from Deshaun. Amber also testified that Deshaun always brought the oxycodone pills to an arranged meet-up. Evidence shows Deshaun got into Hill's car right before his murder yet police did not find any pills on Deshaun.

¶44 We find that the evidence was "adequate and sufficient" for a reasonable jury to conclude Hill's guilt beyond a reasonable doubt as to conspiracy to commit aggravated robbery, armed robbery, and first-degree felony murder. The superior court correctly denied Hill's Rule 20 motion.

## III. Hill Fails to Establish Reversible Error Based on Racial Disparity in Jury Composition.

¶45 Hill argues that underrepresentation of Black potential jurors in his venire panel violated his Sixth Amendment right to a jury comprised of a fair cross section of the community. Hill moved to challenge the jury panel if it did not represent a fair cross section of the community and then objected to passing the jury panel on that basis. Hill also requested an evidentiary hearing to present evidence on this claim. The court denied the request for an evidentiary hearing but allowed Hill to make a record of any

additional information to support his claim. Hill submitted no further evidence on this issue to the court.

¶46        To be qualified as a juror in Arizona, one must be at least 18 years old, be a U.S. citizen, be a resident of the jurisdiction where one is summoned, never have been convicted of a felony unless civil rights have been restored, and not be currently adjudicated mentally incompetent or insane. A.R.S. § 21-201. Courts in Arizona "use random selection procedures throughout the juror selection process including . . . [s]electing persons to be qualified or summoned for jury service, [a]ssigning jurors to panels, [and] [c]alling jurors for voir dire." A.R.S. § 21-313(C).

¶47        For Hill's trial, the superior court used the Struck method to select jurors from the venire panel to sit on the final jury. The Struck method involves randomly assigning jurors a number reflecting the size of the venire panel, and the jurors with the lowest assigned numbers who have not been released become the jury. THE JUDICIAL BRANCH OF ARIZONA MARICOPA COUNTY, RACIAL AND ETHNIC REPRESENTATION THROUGH THE JURY SELECTION PROCESS: AN ANALYSIS OF 2019 JURY DATA FROM THE SUPERIOR COURT OF ARIZONA IN MARICOPA COUNTY 6 (2021), https://napco4courtleaders.org/wp-content/uploads/2021/06/Jury-Representation-Study-Superior-Court-in-Maricopa-County-May-2021.pdf.

¶48        Hill claims that the Struck method of selecting jurors leads to Black potential jurors in a venire panel being "mathematically ineligible" to be placed on a jury. Hill argues that Black members of the venire panel were ineligible to be a juror in his trial because, according to his perception, they were assigned a high number and therefore dismissed after those with the lower numbers were seated on the jury.

¶49        To establish a violation of the fair-cross-section requirement,

> the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). We review a claim of a violation of constitutional rights *de novo*. *In re Marriage of Friedman & Roels*, 244 Ariz. 111, 114, ¶ 11 (2018).

**¶50**        The first element of the *Duren* test is met as there is no dispute that Black is a distinctive group within Maricopa County. But Hill's argument fails at *Duren*'s second step.

**¶51**        Absolute and comparative disparity may be used by courts to assist in determining whether the second element of *Duren* is met. *See State v. Sanderson*, 182 Ariz. 534, 538 n.2 (App. 1995) (using absolute disparity in a *Duren* analysis); *see also Berghuis v. Smith*, 559 U.S. 314, 329 (2010) (identifying three methods: absolute disparity, comparative disparity, and standard deviation and holding "neither *Duren* nor any other decision of this Court specifies the method or test courts must use to measure the representation of distinctive groups in jury pools").

**¶52**        Absolute disparity is calculated "by subtracting the percentage of [Black] Americans in the jury pool . . . from the percentage of [Black] Americans in the local, jury-eligible population . . . ." *Id.* at 323. Comparative disparity is calculated "by dividing the absolute disparity . . . by the group's representation in the jury-eligible population." *Id.*

**¶53**        Hill presented uncontested data that 5.47%[6] of Maricopa County is Black. The parties agreed that six of 184 jurors on the venire panel identified as Black, or 3.26%. The absolute disparity, 3.26% subtracted from 5.47%, is 2.21%. *Id.* The comparative disparity, 2.21% divided by 5.47%, is 40.4%. *Id.*

**¶54**        "[T]he Arizona Supreme Court has indicated that an absolute disparity of 11 percent may, in appropriate cases, be sufficient to . . . conclude that the defendant has satisfied" the second element. *Sanderson*, 182 Ariz. at 538. The Ninth Circuit has found a 2% absolute disparity insufficient to establish the second element. *See United States v. Martinez-Orosco*, 215 F. App'x 693, 695 (9th Cir. 2006); *see also United States v. Rioux*, 97 F.3d 648, 657–58 (2d Cir. 1996) (finding 2.14% insufficient to establish the second element). We conclude that the absolute disparity of 2.21% present here is not sufficient to support the second element.

**¶55**        The second element is unlikely to be met if the comparative disparity is "well below 50 percent . . . especially if the absolute disparity is also small." *Sanderson*, 182 Ariz. at 538, n.2. We recognize that 40.4% is not "well below 50 percent," however, "absolute disparity and comparative

---

[6] The superior court accepted the data as true with the caveat that this percentage "may be overinclusive because it may include folks that aren't even eligible to" be jurors.

disparity measurements . . . can be misleading when . . . 'members of the distinctive group compose only a small percentage of those eligible for jury service.'" *Id.* at 329 (cleaned up) (quoting *People v. Smith*, 615 N.W.2d 1, 2–3 (Mich. 2000)).

¶56 Furthermore, comparative disparity has been disfavored by the First, Second, Eighth, Ninth, and Tenth Circuits, especially when a small population is involved. *See, e.g., United States v. Hafen*, 726 F.2d 21, 24 (1st Cir. 1984) (finding a "comparative disparity figure distorts the proportional representation" for small groups); *Rioux*, 97 F.3d at 655 (rejecting comparative disparity); *United States v. Whitley*, 491 F.2d 1248, 1249 (8th Cir. 1974) (finding comparative disparity is "inappropriate where a small proportion of the population is black"); *United States v. Sanchez-Lopez*, 879 F.2d 541, 547 (9th Cir. 1989) (rejecting comparative disparity); *United States v. Shinault*, 147 F.3d 1266, 1273 (10th Cir. 1998) ("In this case, considering the small size of each of the groups in relation to the larger community, it is not surprising that the comparative disparity numbers are large.").

¶57 Given that this distinctive group makes up a small proportion of Maricopa County and the absolute disparity of only 2.21%, the comparative disparity here is not a reliable indicator of whether the venire panel is "fair and reasonable in relation to the number" of Black Americans in Maricopa County. Hills fails to meet the second element.

¶58 Hill's argument also fails at *Duren*'s third and final step. The third element of the *Duren* test requires Hill to show that the underrepresentation was "inherent in the particular jury selection process utilized." *Sanderson*, 182 Ariz. at 539 (quoting *Duren*, 439 U.S. at 366). Hill argues that the jury selection process in Maricopa County, randomly assigning members of the venire panel a number and empaneling those with the lowest assigned number, leads to Black individuals being "mathematically ineligible" for becoming empaneled jurors.

¶59 Defense counsel based this argument on her perception of the numbers randomly assigned to Black members of the panel. But Hill provided no evidence to the superior court regarding how the Struck method systematically excludes Black individuals. The process is random and not tied to race. Hill's argument is essentially that the random numbers generated failed to result in a sufficient number of Black jurors, but there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975).

**¶60** Although an evidentiary hearing was not granted, the superior court did offer Hill an opportunity to present evidence to support his motion, an opportunity he declined. A showing of underrepresentation of a distinctive group in a jury is not enough to prove systematic exclusion. *Sanderson*, 182 Ariz. at 538; *see also Taylor*, 419 U.S. at 538. Accordingly, the court did not err in denying Hill's motion to challenge the jury panel and motion for an evidentiary hearing on statistical underrepresentation.

**¶61** Hill also argues that the State's use of peremptory challenges[7] supports a claim under *Batson v. Kentucky*, 476 U.S. 79 (1986). But when the court asked Hill if he had an objection to the state's peremptory strikes, he responded that he did not. Hill raised no *Batson* challenge at any point in the trial. A *Batson* challenge is untimely if raised for the first time on appeal. *State v. Holder*, 155 Ariz. 83, 86 (1987). Hill has waived any claim based on *Batson*.

## IV. The Superior Court Properly Admitted Cell Phone Records.

**¶62** Hill argues the superior court erred in admitting cell phone records in violation of hearsay rules. We review a court's evidentiary rulings for an abuse of discretion. *Davis v. Davis*, 246 Ariz. 63, 65, ¶ 6 (App. 2018). Hill also argues the court's admission of the records violated his Sixth Amendment right under the United States Constitution to confront witnesses. We review evidentiary rulings that implicate the Confrontation Clause *de novo*. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).

**¶63** The State used phone records, or call detail records ("CDRs"), to create cell site location information ("CSLI") maps. These maps show the location of cell towers to which a phone connected. The State introduced CSLI maps for phones owned by Deshaun, Hill, Amber, and Sam. The CDRs are generated and stored by Sprint whenever a phone connects to a cell tower. The CDRs only show the caller's telephone number, the number called, the cellular tower to which the caller's phone connected, and the duration of the call in seconds. Hill argues that the use of the CDRs was

---

[7] Arizona eliminated peremptory challenges in criminal and civil trials in August 2021 by order of the Supreme Court of Arizona. Order Amending Rules 18.4 and 18.5 of the Rules of Criminal Procedure, and Rule 47(e) of the Rules of Civil Procedure, No. R-21-0020 (Ariz. 2021). The peremptory challenges here were made in February 2021, before the elimination became effective.

hearsay because they were used for their content, to show the location of the phone.

**¶64**        Even if the CDRs and CSLI maps are hearsay, they are subject to the business records exception. The court applied this exception in admitting the evidence. The business records exception applies to a record if: (1) it "was made at or near the time by – or from information transmitted by – someone with knowledge"; (2) it "was kept in the course of a regularly conducted activity of a business"; (3) "making the record was a regular practice of that activity"; (4) the above "conditions are shown by the testimony of the custodian"; and (5) "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Ariz. R. Evid. 803(6).

**¶65**        The custodian of records for Sprint testified to each of the elements of the exception at trial. Hill does not argue that either the CDRs or the CSLI maps were untrustworthy. The phone records were not used to show the content of messages or phone calls, only to show the cell tower locations to which a phone connected. Hill therefore fails to show that the court abused its discretion in applying the business records exception to hearsay to the cell phone records.

**¶66**        Hill next argues that the admission of the cell phone records violated the Confrontation Clause. The Confrontation Clause bars testimonial evidence of a nontestifying witness from being introduced without the defendant having the prior opportunity to confront that witness. *State v. Fordson*, 258 Ariz. 167, 171, ¶ 14 (App. 2024). Testimonial evidence includes "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations . . . or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Crawford v. Washington*, 541 U.S. 36, 51 (2004). When determining whether a statement is testimonial, "the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (alteration in original).

**¶67**        The cell phone records are not testimonial. The records were "created for the administration of [Sprint's] affairs and not for the purpose of establishing or proving some fact at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). Sprint maintains the records "regardless of their possible use in a criminal prosecution." *State v. King*, 213 Ariz. 632, 638, ¶ 26 (App. 2006) (finding that certain public records were akin to business

records and therefore did not violate the Confrontation Clause). Because the records are not testimonial, there is no Confrontation Clause violation. *See Smith v. Arizona*, 602 U.S. 779, 784 (2024) ("The [Confrontation] Clause's prohibition 'applies only to testimonial hearsay.'" (quoting *Davis v. Washington*, 547 U.S. 813, 823 (2006))).

## V. Hill's Collateral Estoppel Argument Fails.

¶68 Hill next argues because the charges against Sam were dismissed without prejudice, "the State should be precluded from asserting [Sam's] involvement at Hill's trial under the doctrine of collateral estoppel," or issue preclusion. Hill also argues the superior court erred in denying his motion for new trial based on the same. We review a denial of a motion for new trial for an abuse of discretion. *Mills*, 196 Ariz. at 271.

¶69 Issue preclusion bars the same parties from re-litigating an issue once a valid and final judgment determines that issue. *State v. Young*, 258 Ariz. 26, 32, ¶ 20 (App. 2024). A dismissal without prejudice does not constitute a final judgment. *State v. Greenberg*, 236 Ariz. 592, 600, ¶ 36 (App. 2015). Because the State dismissed the charges against Sam without prejudice, issue preclusion does not apply here, and the superior court did not abuse its discretion in denying Hill's motion for new trial.

## VI. The Superior Court Did Not Abuse Its Discretion in Determining Hill Was Competent to Stand Trial.

¶70 Hill argues that the superior court erred in denying his requests to determine his competency retroactively. At sentencing, Hill asked the court to determine whether he was competent during trial. He also moved to vacate his judgment. Hill contends that this error resulted in "Hill's conviction [being] constitutionally invalid," entitling him to a new trial.

¶71 "We review a [superior] court's decision on whether to order an examination and competency hearing for [an] abuse of discretion." *State v. Mendoza-Tapia*, 229 Ariz. 224, 231, ¶ 22 (App. 2012). Under Arizona law, "a defendant has a right to a mental examination and hearing on his competency to stand trial when 'reasonable grounds for an examination exist.'" *Id*. ¶ 23 (quoting Ariz. R. Crim. P. 11.3(a)). "Reasonable grounds exist if there is sufficient evidence to indicate that the defendant is not able to understand the nature of the proceedings against him and to assist in his defense." *State v. Salazar*, 128 Ariz. 461, 462 (1981). A judge may rely on their own observations of the defendant to determine if reasonable grounds exist. *State v. Moody*, 208 Ariz. 424, 443, ¶ 48 (2004).

¶72        Defense counsel brought a Rule 11 motion to determine competency for sentencing more than one year after the completion of trial. A hearing was granted, and while Hill's two experts determined he was not competent, two of the three court appointed experts determined he was competent, with one indicating that he could have been malingering. A Rule 11 Commissioner determined that Hill was competent to proceed to sentencing but did not make a determination on his retroactive competency at trial, telling Hill to instead make a motion before the superior court. Hill did so in March 2024, which the court denied. In July 2024, Hill moved to vacate his judgment due to being incompetent at the time of trial, which was also denied.

¶73        The superior court denied the motion to vacate judgement, because "neither [Hill] nor his attorney requested a Rule 11 evaluation" before or during the trial. The court also noted that it did not order one *sua sponte* because the court inquired into, and defense counsel affirmed, Hill's competency numerous times. Notably, on the eighth day of trial, the court remarked that Hill seemed tired, and asked defense counsel if there were "[a]ny Rule 11 concerns[.]" Hill and his counsel denied any concerns, stating that: "[H]e says he understands what's going on and he—would like to go forward." The court also observed Hill during trial and made a record throughout noting his competency. For example, the court found Hill was getting food, drink, and medication while in custody, was standing and sitting at the appropriate times, and was attentive.

¶74        Accordingly, Hill fails to show the court abused its discretion in denying his requests to retroactively determine his competency during trial. *See Mendoza-Tapia*, 229 Ariz. at 231, ¶ 24 (finding no abuse of discretion in a trial judge denying a retroactive Rule 11 hearing when the judge observed defendant at trial, noted observations of defendant's behavior on the record, and when the defense counsel did not raise Rule 11 concerns before or during the trial).

**CONCLUSION**

¶75        For the foregoing reasons, we affirm Hill's convictions and sentences.